**IN THE COURT OF COMMON PLEAS**
**STATE OF SOUTH CAROLINA**
**COUNTY OF CHARLESTON**
**NINTH JUDICIAL CIRCUIT**

| | |
|---|---|
| ARTHUR CONNOLLY, JR. and TAMMIE CONNOLLY,<br><br>Plaintiffs,<br><br>v.<br><br>TAMERA STANTON, R.N., and ACI FEDERAL, INC.,<br><br>Defendants. | Case # 2:26-mc-1347-BHH<br><br>**CASE NO. 2026-CP-10-________**<br><br>**(Medical Malpractice)** |

# NOTICE OF INTENT TO FILE SUIT

1.

Plaintiffs Arthur Connolly, Jr. and Tammie Connolly give notice under S.C. Code Ann. § 15-79-125 that they intend to sue Tamera Stanton, R.N., and ACI Federal, Inc. for medical malpractice.

2.

Plaintiffs file this Notice with the expert affidavit that S.C. Code Ann. § 15-36-100 requires.

3.

**Adverse parties.** The adverse parties are Tamera Stanton, R.N., a registered nurse who worked in the operating room at the Veterans Affairs Medical Center in Charleston, South Carolina, and her employer, ACI Federal, Inc. Plaintiffs name both as defendants.

4.

**Statement of facts.** Exhibit A is a short and plain statement of the facts showing that Plaintiffs are entitled to relief.

5.

**Standard interrogatories.** Exhibit B contains Plaintiffs' answers to the standard interrogatories that the South Carolina Rules of Civil Procedure require.

6.

**Expert affidavit.** Exhibit C is the affidavit of Maria Casement, MSN, RN, CNOR, sworn September 26, 2026. It identifies the negligent acts and omissions currently claimed and the factual basis for each. Her curriculum vitae is Exhibit A to Exhibit C.

7.

**Venue.** Venue is proper in Charleston County. Ms. Stanton lives in Mount Pleasant, and the care at issue took place at the Veterans Affairs Medical Center in Charleston. Plaintiffs therefore file this Notice in this Court. S.C. Code Ann. § 15-79-125(A).

8.

**Service generally.** Plaintiffs will serve this Notice on each defendant as the South Carolina Rules of Civil Procedure require for a summons and complaint. S.C. Code Ann. § 15-79-125(A).

9.

**Service on Ms. Stanton.** Ms. Stanton lives in South Carolina. Plaintiffs will

serve her by delivering the Notice to her personally, or by leaving it at her dwelling house or usual place of abode with a person of suitable age and discretion who lives there. Rule 4(d)(1), SCRCP. Plaintiffs may instead serve her by registered or certified mail, return receipt requested, with delivery restricted to her. Rule 4(d)(8), SCRCP. Her residence is 1429 N Point Ct, Mount Pleasant, South Carolina 29464.

10.

**ACI's status.** ACI Federal, Inc. is as Delaware corporation that, on information and belief, is not authorized to do business in South Carolina but has and does conduct business in South Carolina. Upon information and belief, ACI's principal office is located at 512 Lafayette Boulevard, Suite D, Fredericksburg, Virginia 22401. Its registered agent is United States Corporation Agents, Inc. located at 131 Continental Drive, Suite 305, Newark, Delaware, 19713.

11.

**Service on ACI through its registered agent or the Secretary of State.** ACI is a Delaware corporation with its principal office at 512 Lafayette Blvd. Suite D, Fredericksburg, Virginia 22401. On information and belief, ACI is not authorized to do business in South Carolina but does business in South Carolina, including its staffing contract with the Department of Veteran Affairs at the Veterans Affairs Medical Center in Charleston South Carolina. ACI's registered agent in Delaware is United States Corporation Agents, Inc., 131 Continental Drive, Suite 305, Newark, Delaware 19713. Plaintiffs will serve ACI by delivering a copy of this Notice to ACI outside South Carolina, at its Delaware registered agent as S.C. Code Ann. § 15-9-

245(d) and Rule 4(e), SCRCP, provide, and will file the delivering person's affidavit of delivery with the Clerk of Court. Plaintiffs may alternatively serve the Secretary of State under S.C. Code Ann. § 15-9-245(a)-(c)

12.

**Mediation.** The parties must mediate within ninety days, and no later than one hundred twenty days, after service of this Notice, unless the Court extends the time by up to sixty days for good cause. S.C. Code Ann. § 15-79-125(C). Plaintiffs will participate.

13.

**Suit after mediation.** If mediation fails, Plaintiffs will file a summons and complaint within sixty days after the mediator finds that mediation is not viable or that the parties are at an impasse, or before the statute of limitations expires, whichever is later.

This 10th day of November 2026.

[SIGNATURE PAGE TO FOLLOW]

*/s/ Andrew Bowen*

W. Andrew Bowen
South Carolina Bar No. 10510
Brighten B. Donner
South Carolina Bar No. 106676

*Attorneys for Plaintiffs*
*Arthur Connolly, Jr. and Tammie Connolly*

**BOWEN PAINTER, LLC**

800 Commercial Court, Suite 1
Savannah, Georgia 31406
(912) 335-1909
andrew@bowenpainter.com
brighten@bowenpainter.com

# EXHIBIT A: STATEMENT OF FACTS

## SUMMARY

1.

Ms. Stanton, a circulating nurse, and her employer, ACI Federal, Inc., failed to protect Arthur Connolly's left arm during what was approximately a seven-hour surgery on June 13, 2024.

2.

Mr. Connolly developed compartment syndrome in that arm and needed emergency fasciotomies.

3.

His wife, Tammie Connolly, brings a claim for loss of consortium.

## PARTIES, JURISDICTION, AND VENUE

4.

Arthur Connolly, Jr. and Tammie Connolly are husband and wife.

5.

Arthur and Tammie Connolly live in Beaufort, South Carolina.

6.

Tamera Stanton, RN, is a registered nurse who lives in Mount Pleasant, Charleston County, South Carolina.

7.

On information and belief, ACI Federal, Inc. is a domestic Delaware corporation and is a foreign corporation in South Carolina. It has a principal business

address in Virginia at 512 Lafayette Boulevard, Suite D, Fredericksburg, Virginia 22401. It's registered agent in Delaware is United States Corporation Agents, Inc. located at 131 Continental Drive, Suite 305, Newark, New Castle County, Delaware, 19713.

8.

ACI employed Ms. Stanton and supplied nursing services to the Veterans Affairs Medical Center in Charleston, South Carolina.

9.

The acts and omissions alleged here happened in Charleston County, South Carolina, at the Veterans Affairs Medical Center.

10.

This Court has subject matter jurisdiction.

11.

This Court has personal jurisdiction over Ms. Stanton, who lives in South Carolina.

12.

This Court has personal jurisdiction over ACI under S.C. Code Ann. § 36-2-803(A)(1), (2), and (3). ACI transacted business in South Carolina. It contracted to supply nursing services here. Its nurse committed the tortious acts alleged here in South Carolina, and ACI acts through its employees.

13.

Pursuant to S.C. Code Ann. § 15-7-30, venue is proper in Charleston County

because Ms. Stanton resided there at the time the cause of action arose and because the cause of action arose there.

## FACTS

14.

On June 13, 2024, Mr. Connolly, then 59, had a robotic-assisted radical prostatectomy and pelvic lymph node dissection at the Veterans Affairs Medical Center in Charleston (the VAMC).

15.

Dr. Paul Womble was the attending surgeon.

16.

Ms. Stanton was a circulating nurse for the surgery.

17.

Ms. Stanton was not a Department of Veterans Affairs employee. ACI employed her.

18.

Ms. Stanton wrote an addendum to the nurse intraoperative report at 4:26 p.m. on June 13, 2024. It states that Mr. Connolly lay supine on an antislide pad in steep Trendelenburg, that both arms were padded and tucked at his sides, and that a safety strap crossed his lap and chest.

19.

Mr. Connolly entered the operating room at 7:52 a.m. The operation began at 8:44 a.m. and ended at 4:02 p.m., a span of seven hours and eighteen minutes. He left

the operating room at 4:08 p.m.

20.

At 9:30 a.m., the anesthesia record noted: "NIBP cuff not reading due to tucked arm NIBP was coorelating w/ art line before tucking."

21.

The anesthesia record states at the time-out that "IV access in place and patent," but does not say where the access was.

22.

There is no nursing documentation that anyone assessed whether Mr. Connolly's arm was properly tucked at any time during the surgery.

23.

At 4:23 p.m., the anesthesia post-operative note recorded: "Left arm swollen, radial pulse obviously strong, good capillary refill. Likely IV infiltration."

24.

At 4:39 p.m., the recovery-room nurse recorded that, according to the urology team, the patient lay supine "with padding tight along both sides during surgery," and that his left upper extremity was "edematous, and firm above the elbow to shoulder via palpation."

25.

Nurses applied an ACE wrap to the arm at 5:11 p.m.

26.

At 8:40 p.m., a nursing assessment recorded a loss of sensation in Mr.

Connolly's left arm.

27.

At 12:52 a.m. on June 14, 2024, an orthopedic resident evaluated Mr. Connolly for "compartment syndrome rule out." The note records swelling from shoulder to hand and small blisters in the axilla. It assesses the arm as "concerning for compartment syndrome" and states "high concern."

28.

At 1:43 a.m., a nurse recorded that Mr. Connolly could not grip with his left hand and had lost sensation in his left arm.

29.

Mr. Connolly was in the hold area at 2:20 a.m. and in the operating room at 2:34 a.m. The operation began at 3:03 a.m. and ended at 3:54 a.m. Surgeons performed fasciotomies on the left upper arm and forearm.

30.

Mr. Connolly then needed repeated surgery: a fasciotomy on June 14, closure on June 16, irrigation, delayed closure, and a wound vacuum on June 18, an open carpal tunnel release on June 20, and delayed closure with a skin graft on June 27, 2024.

31.

As of today's date, the compartment syndrome has not resolved, and Mr. Connolly has not regained significant function in his left arm.

**NEGLIGENCE**

32.

Ms. Stanton breached the standard of care for operating room nurses in at least three ways.

33.

First, she failed to position Mr. Connolly safely on the operating room table for the length of the surgery.

34.

Second, she failed to document the placement and position of his IV and failed to monitor whether it worked before and during surgery.

35.

Third, she failed to monitor him adequately during surgery. She did not identify or act on the tight padding on both sides of the table, the blood pressure cuff that would not read, the length of the operation, or the lack of documentation about the IV.

36.

A reasonably prudent nurse in like circumstances would have known that these conditions, alone and together, created a risk that a patient would develop compartment syndrome in the affected arm.

37.

Ms. Stanton was employed by ACI and acted within the scope of that employment at all relevant times.

38.

ACI is liable for her acts and omissions under the doctrine of respondeat superior.

39.

Because of these breaches, Mr. Connolly developed compartment syndrome in his left arm and suffered the damages described below.

40.

Because of these breaches, Mrs. Connolly suffered a loss of consortium.

**DAMAGES**

41.

Mr. Connolly's injuries are continuing. Plaintiffs allege that the loss of function in his left arm is permanent.

42.

Mr. Connolly will claim damages for past and future medical expenses and for past and future lost wages and loss of earning capacity.

43.

Mr. Connolly will also claim damages for past and future physical pain and suffering; mental anguish and emotional distress; permanent impairment of his left arm; loss of independence, including his ability to care for himself, dress, feed himself, and maintain his home; and loss of enjoyment of life.

44.

Mrs. Connolly will claim damages for loss of consortium. She has lost her

husband's companionship and intimacy, and she now helps him with dressing, feeding, bathing, and household tasks.

45.

Plaintiffs' damages are continuing and not yet fully known. Plaintiffs will supplement their answer to Interrogatory 5 in Exhibit B as necessary.

**EXPERT AFFIDAVIT AND RESERVATION**

46.

Exhibit C is the affidavit of a qualified expert (Maria Casement). It identifies the breaches of the standard of care described above.

47.

Neither the affidavit nor this Statement is a complete list of Defendants' negligent acts or omissions or of Plaintiffs' damages. Plaintiffs reserve the right to add to both as discovery continues.

**RELIEF**

48.

Plaintiffs intend to seek judgment against Defendants for actual damages, the costs of the action, and any other relief the Court finds just and proper.

This 10th day of November 2026.

[SIGNATURE PAGE TO FOLLOW]

*/s/ Andrew Bowen*

W. Andrew Bowen
South Carolina Bar No. 10510
Brighten B. Donner
South Carolina Bar No. 106676

*Attorneys for Plaintiffs Arthur Connolly, Jr. and Tammie Connolly*

**BOWEN PAINTER, LLC**

800 Commercial Court, Suite 1
Savannah, Georgia 31406
(912) 335-1909
andrew@bowenpainter.com
brighten@bowenpainter.com

**EXHIBIT B: PLAINTIFFS' ANSWERS TO STANDARD INTERROGATORIES**

Plaintiffs answer the standard interrogatories under S.C. Code Ann. § 15-79-125(A) and Rule 33(b), SCRCP.

**Interrogatory 1.** Give the names and addresses of persons known to the parties or counsel to be witnesses concerning the facts of the case and indicate whether or not written or recorded statements have been taken from the witnesses and indicate who has possession of such statements.

**Answer:** Plaintiffs know of the following people with knowledge of the facts:

**Plaintiffs.** Arthur Connolly, Jr. & Tammie Connolly, 1634 Hampton Drive, Beaufort, South Carolina 29906. Contact through Bowen Painter, LLC, 800 Commercial Court, Suite 1, Savannah, Georgia 31406, (912) 335-1909.

**Family members.** Plaintiffs identified their children Caitlin Connolly, Cheyanne Connolly, Tianna Garcia, Zachary Trent, and family members Sean Connolly and Makalia Solis. These people may be contacted through Bowen Painter, LLC, 800 Commercial Court, Suite 1, Savannah, Georgia 31406, (912) 335-1909.

**Defendants.** Tamera M. Stanton, R.N. & ACI Federal, Inc., 512 Lafayette Boulevard, Suite D, Fredericksburg, Virginia 22401.

**Operating room and anesthesia personnel, June 13, 2024:** Christopher W. Ritchie, Paul R. Womble, Gabrielle R. Yankelevich, James M. Dixon, R.N., S. Williams, Stacey Denise Williams, Gunnar James Nemitz, and Donald Kilpatrick, M.D. Address: Ralph H. Johnson VA Medical Center, 109 Bee Street, Charleston, South Carolina 29401.

**Orthopedic and surgical consultants.** William E. Allen, William Michael Pullen, Frank Richard Voss, John A. Glaser, Annemarie C. Galasso, Mary K. Lynch, Briana E. McLaughlin, and Fernando Herrera. Address: Ralph H. Johnson VA Medical Center, 109 Bee Street, Charleston, South Carolina 29401.

**Inpatient pulmonary embolism admission.** Pranav V. Shah, M.D., attending, and Danny Nixon, M.D. Address: Ralph H. Johnson VA Medical Center, 109 Bee Street, Charleston, South Carolina 29401.

**Other VA chart authors.** The chart lists many other clinicians as authors, cosigners, or ordering providers. Address: Ralph H. Johnson VA Medical Center, 109 Bee Street, Charleston, South Carolina 29401.

**Beaufort providers.** Walter Schuyler, M.D., and Linda Hubbard, P.A., Beaufort Southern Coast Spine and Pain Specialists, 1055 Ribaut Road, Suite 30, Beaufort, South Carolina 29902. Records custodians for Beaufort Memorial Hospital, 955 Ribaut Road, Beaufort, South Carolina 29902, and Beaufort Orthopaedic Sports and Spine, 1076 Ribaut Road, Suite 101, Beaufort, South Carolina 29902.

**Statements.** Plaintiffs are not currently in possession of any written or recorded statement.

**Interrogatory 2.** Set forth a list of photographs, plats, sketches or other prepared documents in possession of the party that relate to the claim or defense in the case.

**Answer:** Please see below:

1. Veterans Affairs records: the My HealtheVet Blue Button report (VHA 1 to

979); VA records (VHA 980 to 1321); the June 13, 2024 anesthesia and PACU record (VA 1322 to 1397); and the intraoperative anesthesia notes (VHA 1398 to 1407).

2. Beaufort Memorial Hospital records (BMH Records_000001 to 000415) and bills (BMH Bills_000001 to 000004).

3. Beaufort Orthopaedic Sports and Spine records (Bates 1 to 8) and ledger.

4. Beaufort Southern Coast Spine and Pain Specialists records and billing ledger (BSCSP_000001 to 000080).

5. The records Defendants produced in the federal case, Connolly_MedRecs_00001 to 03063, including the ACI staffing contract at Connolly_000077.

6. The Veterans Affairs Office of General Counsel letter dated March 13, 2026.

7. The affidavit of Maria Casement and her curriculum vitae.

8. Photographs. Photographs of Mr. Connolly and his injuries.

9. Plats and sketches. Plaintiffs have none.

**Interrogatory 3.** In cases involving personal injury set forth the names and addresses of all physicians who have treated the party and all hospitals to which the party has been committed in connection with said injuries and also set forth a statement of all medical costs involved.

**Answer:** Mr. Connolly has been treated by the following providers because of the injuries at issue.

1. **Ralph H. Johnson VA Medical Center**, 109 Bee Street, Charleston, South Carolina 29401. Prostatectomy and compartment syndrome surgeries (June

2024), and inpatient treatment for pulmonary emboli. Medical costs, to be determined.

2. **Beaufort Memorial Hospital**, 955 Ribaut Road, Beaufort, South Carolina 29902. Treatment of acute bilateral pulmonary emboli with thrombectomy in July 2024. Charges: $36,021.92. Service dates on the bill: July 1 to July 2, 2024.

3. **Beaufort Orthopaedic Sports and Spine**, 1076 Ribaut Road, Suite 101, Beaufort, South Carolina 29902. Occupational therapy beginning August 9, 2024. Charges: $222.00.

4. **Beaufort Southern Coast Spine and Pain Specialists**, 1055 Ribaut Road, Suite 30, Beaufort, South Carolina 29902. Pain management, including a left stellate ganglion block on August 5, 2025, by Walter Schuyler, M.D. Charges from September 18, 2024, through August 20, 2025: $8,269.72, with payments of $2,684.80, adjustments of $5,584.92, and a balance of $0.00.

**Total.** Billed charges from the three non-VA providers: $44,513.64.

**Interrogatory 4.** Set forth the names and addresses of all insurance companies which have liability insurance coverage relating to the claim and set forth the number or numbers of the policies involved and the amount or amounts of liability coverage provided in each policy.

**Answer:** Plaintiffs hold no liability insurance that relates to this claim. Plaintiffs do not know the identity of any liability insurer for Tamera Stanton, R.N., or ACI Federal, Inc., or the policy numbers or limits. Plaintiffs ask Defendants to disclose that information.

**Interrogatory 5.** Set forth an itemized statement of all damages, exclusive of pain and suffering, claimed to have been sustained by the party.

**Answer:** Plaintiffs claim the following damages, apart from pain and suffering:

1. **Past medical expenses.** $44,513.64 in billed charges: Beaufort Memorial Hospital, $36,021.92; Beaufort Orthopaedic Sports and Spine, $222.00; and Beaufort Southern Coast Spine and Pain Specialists, $8,269.72.

2. **Future medical expenses.** Not less than $2,000,000. Plaintiffs will support this amount with expert disclosures.

3. **Past and future lost wages and earning capacity.** Not less than $1,000,000. Mr. Connolly was self-employed as a cabinet installer and finish carpenter with contracts in Georgia and South Carolina, and the injury has ended that work. Plaintiffs have not finished the computation and will supplement it.

4. **Loss of household services (Tammie Connolly).** Not less than $500,000.

5. **Loss of consortium (Tammie Connolly).** An amount for the jury, which is not a claim for pain and suffering.

**Interrogatory 6.** List the names and addresses of any expert witnesses whom the party proposes to use as a witness at the trial of the case.

**Answer:** Plaintiffs expect to call Maria Casement, MSN, RN, CNOR, 6080 Stillwood Lane, Cumming, Georgia 30041, a circulating operating room nurse, on the standard of care for perioperative nursing and on causation. Her affidavit is attached

to the Notice. Plaintiffs have not decided on other trial experts.

**Interrogatory 7.** For each person known to the parties or counsel to be a witness concerning the facts of the case, set forth either a summary sufficient to inform the other party of the important facts known to or observed by such witness, or provide a copy of any written or recorded statements taken from such witnesses.

**Answer:** Plaintiffs refer Defendants to the people listed in response to Interrogatory No. 1 and other healthcare providers in Arthur Connolly Jr.'s medical records. Plaintiff is not in possession of any written or recorded statements.

This 10th day of November 2026.

*/s/ Andrew Bowen*
W. Andrew Bowen
South Carolina Bar No. 10510
Brighten B. Donner
South Carolina Bar No. 106676

*Attorneys for Plaintiffs Arthur Connolly, Jr. and Tammie Connolly*

**BOWEN PAINTER, LLC**

800 Commercial Court, Suite 1
Savannah, Georgia 31406
(912) 335-1909
andrew@bowenpainter.com
brighten@bowenpainter.com

# EXHIBIT C: AFFIDAVIT OF MARIA CASEMENT, MSN, RN, CNOR

| | |
|---|---|
| STATE OF SOUTH CAROLINA<br>COUNTY OF CHARLESTON<br><br>ARTHUR CONNOLLY, JR. *and* TAMMIE CONNOLLY,<br><br>Plaintiffs,<br><br>v.<br><br>TAMERA STANTON, R.N. and ACI FEDERAL, INC.,<br><br>Defendants. | IN THE COURT OF COMMON PLEAS<br>NINTH JUDICIAL CIRCUT<br>CIVIL ACTION NO. __________<br><br>**AFFIDAVIT OF MARIA CASEMENT, RN** |

Personally appeared before me, Maria Casement, MSN, RN, CNOR, who after being first duly sworn, states as follows:

1. I, Maria Casement, MSN, RN, CNOR, state the facts and opinions herein under penalty of perjury under the laws of the United States of America to the best of my personal knowledge and belief.

2. I am an individual, not a party to the case, over the age of eighteen, and competent to testify to the facts stated herein.

3. I attended the Medical College of Georgia where I received my Bachelor of Science in Nursing in 2008. In 2011, I obtained my Certified Nurse – Operating Room certificate. Thereafter, I attended Georgia State University where I received my Master of Science in Nursing in 2013.

4. I have been actively and continuously engaged in the field of operating room nursing since 2008. I worked as an operating room nurse and nurse educator at WellStar MCG (formerly Augusta University Medical Center) in Augusta, Georgia, from May 2008 to March 2019. From June 2019 to September 2019, I worked at Samaritan Medical Center in Watertown, New York, as an operating room nurse. From November 2019 to January 2022, I worked at Emory Saint Joseph's Hospital as an operating room nurse and a nurse educator. From January 2022 to August 2023, I worked at Emory Ambulatory Surgery Centers as an operating room nurse and a

nurse educator. Since September 2023 to the present, I have worked at Northside Forsyth Surgery Centers as an operating room nurse. Attached to this Affidavit and incorporated by reference is my current Curriculum Vitae, which provides additional information on my background, training, and experience.

5. Based upon my education, training, knowledge, skills, and experience, I am familiar with the standard of care for nurses and staff caring for, monitoring, and treating surgical patients under general anesthesia in general and in like and similar circumstances to those presented in the surgery performed on Arthur Connolly on June 13, 2024. I have actual professional knowledge, skill, and experience in monitoring and treating patients under general anesthesia.

6. I have been regularly and continuously engaged in the practice of nursing as an operating room nurse continuously for the last five years prior to June 13, 2024, and from that date forward. I have acted with sufficient frequency to establish an appropriate level of knowledge in monitoring, positioning, and treating patients while under general anesthesia. I also during this period have and continue to regularly supervise, train, and educate other nurses in my current position as circulating nurse. In my opinion, Defendant Tamera Stanton, R.N., who was employed by Defendant ACI Federal, Inc., deviated from the applicable standard of care when providing nursing and related medical services to Arthur Connolly.

7. I have personally reviewed the medical records pertaining to Arthur Connolly's medical evaluation and treatment beginning on June 13, 2024. Specifically, I have reviewed the records from the VA Medical Center Charleston (VHA 1-1407), dates of service October 2023 until June 28, 2024, including all operative notes and records for surgery date of June 13, 2024.

8. From my personal review of the records, I have based my opinions, which are stated to a reasonable degree of medical certainty and/or probability, upon the following facts:

(a) On June 13, 2024, Arthur Connolly underwent a robotic assisted radical prostatectomy and pelvic lymph node dissection by VAMC surgical providers, including Dr. Paul Womble, and operating room nurses, including Defendant Tamera Stanton, R.N. (and James Dixon, R.N.), at the Ralph Johnson VA Medical Center (VAMC) in Charleston, South Carolina. Upon information and belief,

Defendant Tamera Stanton, R.N., was furnishing nursing services at the VAMC through her employer, Defendant ACI Federal, Inc. The anticipated surgery time, per the treating urologist, Dr. Christopher W. Ritchie, was 2.5 to 4 hours.

(b) The initial blood pressure measurement was recorded at 06:26, with a reading of 147/92. However, there is no indication of the site from which this measurement was obtained; but it can be assumed it is from a Non-invasive Blood Pressure ("NIBP") cuff and not an invasive reading.

(c) At some point prior to anesthesia start time, the records support an assumption that an IV was started in the left arm by an unidentified nursing staff member at the VAMC. However, there is no nursing documentation describing who started the IV, its location, its status (i.e., successful, attempted, failed, etc.), or other customarily documented information regarding the procedure.

(d) At 0702, anesthesia records state, "IV in place and patent" however no location of IV is mentioned.

(e) Anesthesia start time was 0710. Surgery start time was 0844.

(f) At 0930, anesthesia records state, "[NIBP] cuff was not reading due to tucked arm. NIBP was correlating with arterial line before tucking." Due to the lack of reading on Mr. Connolly's blood pressure cuff, providers knew or should have known there was a potential issue with Mr. Connolly's positioning and circulation on his left arm.

(g) Anesthesia records note that the arterial line is in the right arm. There is no documentation from nursing that an assessment was made for proper tucking of the arm at any time during the surgery.

(h) Surgery end time is 1602. Anesthesia end time is 1618.

(i) At 1623, Anesthesiology post op notes "Left arm swollen, radial pulse obviously strong, good capillary refill. Likely IV infiltration, otherwise satisfactory immediate recovery from general endotracheal anesthesia. Had Dr. Brothers exam his arm who suggest an ACE wrap."

(j) Anesthesia intraoperative flowsheets show 1000 mLs of Ringers Lactate solution and 2,000 mLs of Plasmalyte fluid infused during surgery through the IV, presumably in the left arm.

(k) At 1639 the PACU RN Kristen Moody, RN, states the following: "Per Urology surgery team, patient laid supine with padding tight along both sides during surgery. Upon arrival to PACU, noted left upper extremity edematous and firm above the elbow to shoulder via palpation." Vascular surgery is called as well as anesthesia. Capillary refill is noted to be 3.

(l) At 1623, Donald Kilpatrick, MD, notes likely IV infiltration and orders an Ace wrap.

(m) Operating room nurses, including Defendant Tamera Stanton, R.N., are or ought to be trained and taught that improper IV placement, positioning, and function can lead to compartment syndrome during surgical procedures. These risks increase with longer surgical times. The fact that Mr. Connolly had IV infiltration on the left arm supports a reasonable inference that Mr. Connolly's IV was not properly placed, positioned, or functioning. This is further supported by the lack of documentation from nursing staff that Mr. Connolly's IV was properly placed, positioned, and functioning.

(n) At 1711, an ace wrap is applied to the arm by Kristen Moody, RN, thereby adding additional constriction to the arm.

(o) At 2040, Mr. Connolly reports loss of sensation to the left arm.

(p) Sometime around or after 2300, the ace wrap is removed, and Mr. Connolly reports significant pain to the arm; it is noted that the entire left arm is swollen and tight and small blisters have now appeared on the arm. Orthopedics are consulted for concern of compartment syndrome.

(q) On June 14, 2024, at 0052, Orthopedic provider William Allen, MD, sees Mr. Connolly and diagnoses him with compartment syndrome. Mr. Connolly is ordered to immediate emergency surgery and taken back to the operating room around 0220.

(r) Left upper arm and posterior fasciotomy as well as left forearm fasciotomy are performed. Extensive damage is noted to the left arm with tight upper and lower arm compartments.

(s) To date, Mr. Connolly's compartment syndrome has not resolved, and he has not regained the significant lost function in his left arm.

9. Based upon my education, training, and experience as set forth herein and further detailed in my CV attached hereto as Exhibit A, as well as upon my review of Mr. Connolly medical records, I have formed the following opinions to a reasonable degree of medical certainty and/or probability.

(1) Operating room nurses have a duty to ensure patient safety for the duration of surgery, including proper positioning, IV access and placement, and vital monitoring, to include blood pressure and circulation; a duty to inform higher-level providers (including surgeons and/or anesthesiologists) of concerns regarding patient safety and condition and to advocate for the same; and a duty to adequately and properly document nursing activity, intervention, and monitoring information.

(2) Operating room providers are taught and reasonably should be aware of risks and causes of potential compartment syndrome, including improper positioning and/or potential IV infiltration.

(3) Defendant Tamera Stanton, R.N., failed to provide appropriate positioning on the operating room table to ensure the patient's safety for the duration of the surgery.

(4) Defendant Tamera Stanton, R.N., failed to adequately document the placement and position of Mr. Connolly's IV and to monitor and ensure it was adequately functioning before and during surgery.

(5) Defendant Tamera Stanton, R.N., failed to provide appropriate monitoring of the patient during surgery to ensure or identify appropriate padding for safety; especially considering "tight padding" on both sides of the table, notations that NIBP cuff was not reading at all should have provided notice of potential problems with positioning and/or circulation, extended duration of the procedure well beyond

the anticipated duration, and lack of documentation regarding left-side IV attempt and/or access.

(6) A reasonably prudent nurse in like and similar circumstances would know that both individually and collectively, these conditions indicated concern for possible constriction and/or IV infiltration that risk a patient developing compartment syndrome in the affected extremity.

(7) Each act or omission set forth herein constitutes a deviation from the prevailing professional standard of care for competent providers under similar circumstances by Defendant Tamera Stanton, R.N., in the provision of nursing services to Mr. Connolly. Defendant ACI Federal, Inc., as the employer of Defendant Tamera Stanton, R.N., is vicariously liable for the acts and omissions of Defendant Tamera Stanton, R.N., under the doctrine of respondeat superior.

10. This Affidavit is based upon information available at the time it was made. It is not intended as a recitation of all opinions I may have in this matter, to include opinions on standard of care, causation, and damages. I hereby reserve the right to modify, change, revoke, or otherwise revise or supplement my opinions as additional or different information or evidence is made known to me.

**FURTHER, AFFIANT SAYETH NOT.**

I, Maria Casement, RN, state that the foregoing facts and opinions are true and correct under penalty of perjury of the laws of the State of Georgia and the United States.

JERRY ANDREW GIGLIA
NOTARY PUBLIC
MY COMMISSION EXPIRES 10 AUG 2028
DAWSON COUNTY GEORGIA

SWORN TO before me this 26TH day of SEPTEMBER, 2026

[signature]

Notary Public [signature]

My commission expires: 10 AUG 2028

[signature] Maria Casement RN

**Maria Casement, R.N.**

DAWSON County, Georgia, USA

# EXHIBIT C-A: CV OF MARIA CASEMENT, MSN, RN, CNOR

**Maria Casement, MSN, RN, CNOR**
**Cumming, Georgia**
**706.799.7398**
marcasement@gmail.com

## EDUCATION

**Georgia State University** — Master of Science in Nursing (MSN)
**Medical College of Georgia** — Bachelor of Science in Nursing (BSN)

## PROFESSIONAL LICENSURE

Registered Nurse (RN) - Nurse Licensure Compact (NLC), Georgia: 198885 (Expires 1/31/2028)

## SPECIALTY CERTIFICATION

Certified Operating Room Nurse (CNOR) 2011- Present

## PROFESSIONAL AFFILIATION

Association of Operating Room Nurses (AORN) #558697

## CLINICAL EXPERTISE SUMMARY

- Perioperative patient safety and intraoperative patient advocacy
- Application of AORN standards and evidence-based perioperative nursing guidelines
- Surgical time-out execution, informed consent verification, and surgical site marking compliance
- Infection prevention practices and maintenance of sterile technique
- Surgical counts and prevention of retained surgical items
- Safe patient positioning and prevention of neurologic, pressure-related, and musculoskeletal injuries
- Accurate intraoperative documentation in compliance with legal medical record standards
- Compliance with CMS, OSHA, and accreditation requirements
- Operating room fire risk assessment, including ignition source control, oxidizer management, fuel source mitigation, and adherence to AORN surgical fire prevention guidelines

## EXPERIENCE

**Northside Forsyth Surgery Centers** — **September 2023 – Present**
**Cumming, Georgia**
***Circulating Nurse, Operating Room***
Ensures patient safety through adherence to perioperative standards; verifies consent and site marking; maintains sterile technique; performs and documents surgical counts; ensures safe patient positioning; and completes accurate intraoperative documentation.

**Emory Ambulatory Surgery Centers** — **January 2022 – August 2023**
**Atlanta, Georgia**
***Circulating Nurse, Operating Room***
***Nurse Educator, Operating Room***
Ensured patient safety through adherence to perioperative standards; verified consent and site marking; maintained sterile technique; performed and documented surgical counts; ensured safe patient positioning; and completed accurate intraoperative documentation. Enforced perioperative policies and standards; educated and precepted staff; coordinated clinical orientation and competency validation with emphasis on patient safety and regulatory compliance

**Emory Saint Joseph's Hospital** **November 2019 – January 2022**
**Atlanta, Georgia**
***Circulating Nurse, Operating Room***
***Nurse Educator, Operating Room***
Provided perioperative care in compliance with AORN, CMS, OSHA, and accreditation standards; ensured accurate documentation, sterile technique, and surgical counts; developed perioperative competencies.

**Samaritan Medical Center** **June 2019 – September 2019**
**Watertown, New York**
***Circulating Nurse, Operating Room***
Safely circulated multiple surgical specialties including robotic and oncologic procedures; administered medications; monitored patient status; and documented intraoperative care.

**Augusta University Medical Center** **May 2008 – March 2019**
**Augusta, Georgia**
***Circulating Nurse, Operating Room***
***Nurse Educator, Operating Room***
Provided perioperative nursing care in high-acuity trauma and elective settings; verified consent and site marking; ensured compliance with surgical safety protocols; educated staff on perioperative standards and patient safety.

**SURGICAL SPECIALITY EXPERIENCE**

- General
- Laparoscopic
- Orthopedic
- Urology
- Gynecology
- Plastic
- Robotic
- Vascular
- Kidney Transplant
- Surgical Oncology
- ENT
- Trauma Surgery